May it please the court, Mary Givens for Appellant Martin Roman. I'm requesting five minutes rebuttal time. Thank you. Well once again it seems that we're asking the court to look at an issue of ambiguous state procedure here. Let's see if we can even get to that. On which issue are you talking about? The exhaustion. Okay. On the exhaustion issue I would just simply like to point out that at the time the key moment for whether or not there is an alternative state procedure or any available state procedure that Mr. Roman could have availed himself of, at that time the cases that Appellee has cited saying well the Pennsylvania courts have considered this issue, they haven't been decided yet, and at that time his view that there was no procedure available to him concurred with this court's belief in Defoy 1 that there was no available procedure for this issue to be raised. What year was Rogers? Pardon? What year was Rogers decided? Rogers I believe was 99. I think it was 99 and Weaver was I think 97. Ms. Givens can I trouble you for a moment something preliminary. This case has a lot to do with that second conviction, the sexual contact. Everything to do with that, yes. Everything to do with that. But the conviction was in the year 2001 if I'm not mistaken. Yes. 10 years, 10-11 years ago. Right. And the appeal of that case is intimately related to the issues here. Correct. What is the status of that case? The case became final in I believe it's 06. If I can just, I actually have a timeline on this because the facts and the two cases relating to each other are so complex. I have it noted that in February of 06, conviction 2 becomes final in Pennsylvania courts. 06, well it's under appeal. Pardon? It's on appeal? That was the sex offense. The sex offense is on appeal? It was on appeal at the time the petition was filed challenging the parole denial. What's the current status of that appeal? I believe that that case is final at this point. There's no appeal? On the second conviction. He was convicted, he was sentenced, he appealed it. Affirm the Supreme Court refused to? That's correct. But one of his concerns is that a statement that he makes in connection with the parole hearings is specifically that he participated in a drug treatment program. One of his concerns is that statements that he made there would prejudice him with regard to the appeal. Well it would prejudice him in the event that certainly in regard to the appeal it would prejudice him in the event that he obtained a new trial. It would prejudice him obviously if other criminal behavior were to have been revealed. But these issues would be moot now. Well other than additional criminal behavior, which wouldn't be moot, but in terms of the pendency of his second conviction, yes. It wouldn't be moot because in fact he's arrested in 2000 and then begins a fairly complex calculation of his parole status from the first conviction, which is not really before this court at this point. But the essence of his claim is a Fifth Amendment incrimination type of argument, is it not? He loses six years basically where he's denied parole because of his assertion of his Fifth Amendment claim. When did he first make the Fifth Amendment claim? He first makes the Fifth Amendment claim in the district court. But he's not pressing, he would not be pressing that anymore because his appeal is finished. Well this is still a live claim for him because to the extent that he's denied parole from 2000 when he's re-arrested until 2006, six years, he's denied parole on the first conviction or re-parole. If he had been re-paroled immediately, let's say, then he begins serving the time for his second conviction. I see. So he's looking for credit for time that he has been spending in prison. Correct. He would have finished his second conviction, he has 16 to 32, so he'd be out. But there's nothing to prevent him from going to the parole board and satisfying their requirements that he participate in this program. He can no longer say, I would incriminate myself if I have to admit the events of the sexual contact. At the time he filed the petition, that's not correct. At the present time, I believe that it is correct, except as to additional criminal conduct. Well, that's why I said he can no longer take that position. It's not a live claim. It's not a new claim at this point, but it certainly was because he files the petition in federal court before his state conviction is filed. Let me go back to when he first raised it. He said it in the district court, but it was in response to Magistrate Hart's report and recommendation. Is that the first time he raised it? I believe that that is correct. Why isn't it waived? If he didn't raise it before Magistrate Hart, and we've got cases that say this, he didn't raise it until after he sees the ROR and decides to object to that. Why isn't it waived? How can he not raise the issue? Well, that issue, he wasn't challenged on that issue, and because in the ROR... I didn't understand that. He was what? Not challenged on that issue? Correct, on the objection. So the state did not take the position that he had waived it? That's my understanding, yes. Well, what if we take that position? Or why shouldn't we take that position? Well, I think that it's not directly implicated by his ex post facto argument, which was his primary argument in the district court. He had an ex post facto argument. He also had an argument about the calculation. Right. He was arguing, when he went into district court, he was making the argument he made in the Commonwealth Court, calculation of jail time and ex post facto violation, which was one of those things which apparently you could bring from the Crow Board to the Commonwealth Court. In the sense he's arguing a constitutional due process violation, the due process violation is the ex post facto Fourteenth Amendment due process violation in that sense, but the Fifth Amendment due process violation that he wants to make now wasn't initially raised before the magistrate. And my concern is whether or not it's been waived even though the Commonwealth may not have yet jumped up and down on it. I mean, it was addressed to some extent in the R&R, and then the court just adopts the R&R even after he raises the objections to the R&R. How could the R&R have addressed it if it wasn't before the magistrate? It was in the discussion of the pending state of the law. It was not really an analyzed claim. And when you say analyzed claim, you're talking the Fifth Amendment claim was not? Correct. Is that Fifth Amendment claim exhausted? I'll take a look at the R&R. I'm putting it in there. Can you say it was exhausted given that it wasn't presented for the first time before the magistrate? As of exhausted in the habeas sense of exhausted before the state court, I think that the issue is that the state court at that time, and actually at this time, still has not clarified whether or not a Fifth Amendment claim can be raised in a mandamus action. They clarified it can't be raised. You can't bring a direct appeal from a parole denial. Roger says, maybe you can bring a mandamus action. Weaver comes along, allows the mandamus action. Then there's an interplay between this court and the state courts. And there's a certified question that goes, and I believe it was Cody. It comes back that ex post facto can be raised.  But some courts, state courts, had said that a constitutional claim could be presented in a mandamus petition. Subsequent to this court's decision in DeFoy, there are several cases in the Commonwealth courts that analyze it. There's no Pennsylvania Supreme Court decision that says, yes, you can raise all the constitutional claims. They've never done that. Had there not been state courts that said that we can consider constitutional claims when he presented his mandamus in the Pennsylvania state court? They've not said subsequently, yes, we can do it. They've done it. They've just referred to it. They've denied them summarily. They've said, we've considered 1, 2, 3, 4. And we've denied them. But there is no explication of whether or not, indeed. Granted, the landscape lacked clarity. And it's very difficult for someone to decide whether I can or I can't. But doesn't it make sense for a petitioner to just go ahead and add a Fifth Amendment claim? Actually, at the point when Roman files his petition, it's pretty clear. Because Weaver is out there saying, no. And this court is out there in DeFoy 1 saying, you can't raise anything. It's only an ex post facto claim that is available for raising in mandamus. So in terms of, should he have just done it anyway? Well, I mean, that's not the exhaustion test, obviously. Now, let's say, all right, put the exhaustion issue aside. Can we address it on the merits? On the compulsion issue. The cases that have considered this, and there have been numerous in various circuits. It's been coming up more and more, the sex offender treatment programs. They've all gone the other way. There's one, actually, in the Ninth Circuit that's gone. It's called U.S. v. Antelope. And the McCune case really says, there's a continuum of compulsion. If you refuse to participate in the treatment program. It's not really an additional penalty, is it? It's not a sanction? Not if you have your cell changed. Not if you lose your TV privileges. That's not compulsion. Well, requiring a prisoner, somebody who is serving a sentence, to participate in a drug treatment program is not adding an additional punitive measure. It's not a sanction. It's not a penalty. Well, two aspects here. Number one, what Mr. Roman is claiming, is that because he is not participating in the admissions part of the program, that he is being denied consideration for parole. Granted, he has come up and had parole hearings, and he gets the standard form listing of reasons why we're not granting you parole. But the real thing going on here is that he's being denied parole. And what he's saying is, nobody who fails to make these admissions in the context of this program is getting parole. So therefore, we're very far along this continuum of compulsion. We're really into one of the things that Justice O'Connor gave as an example, which was a denial of parole. So what he's saying is, by virtue of being unwilling to participate in this admissions part of the program, where he would have to admit his prior conduct, that that is so far along the continuum that it does fall into a compulsion. It's very distinct from the multitude of these cases where you only have one conviction, and what happens is you don't get parole on that conviction, bearing in mind the conviction that he's being denied parole on is one that carried a very lengthy sentence, and he won't conclude that until I believe now it's 2016. And then he will be able to commence the 16 to 32 months on the second conviction. I don't want to cut you off, but I wanted to bring to my attention where in the ROR Magistrate Hart mentions enough of this so that the Fifth Amendment claim was fairly presented, if I can use that technical term, under AEDPA to the district court. So if you have a chance to sit down and take a look at that, just let me know what page of the ROR that's on. I would say that it's really more interpretive at this point of saying it was not clearly presented by a pro per prisoner as a Fifth Amendment claim. All right, which is kind of like saying it's not there, but if you squeeze and squint and really turn the lights up high enough, you can probably find it dancing in the margins. It's a pro per, Your Honor. Okay. We have a pro per prisoner here, and we do a lot of squeezing. Yeah, but he didn't write the ROR. Pardon? Magistrate Hart wrote the ROR. Oh, that's correct. My concern was that it was never presented to. No, but it's a question of his raising it in the terms of saying, this is a Fifth Amendment claim. I think we're not going to find that there. Well, he didn't even have to put a number in there. If he just said, look, this is not right because they're making me dime myself out on this other charge in order to get probation. In order to be considered for. Right. In order to even be considered. So you don't need legalese for that. They can't make me bad on myself. What he's really saying is, this is an ex post facto because now I have to do the sex offender treatment program. I didn't have to do it. I was paroled before. Now I have to make these admissions. This is a problem. It's a problem because of the ex post facto. He's arguing that in the context of an ex post facto, but someone looking at this is saying, you're concerned about the fact you're going to have to make these admissions. That's a Fifth Amendment problem. Okay. Someone knows better than I do as a lawyer. Pardon? I know it's a prosaic term. Someone looking at it meaning he's a lawyer. But if he's sufficiently skilled in these complaints, even though he's prosaic, to use Latin ex post facto, I'm not sure it's unfair to say he didn't really put this in his complaint before. I'm not convinced that most pro pers could solve a vocabulary test in Latin of what ex post facto means. I think they just know that that's a claim they can make. That's true. Fifth Amendment, I don't want to belabor this, but knowing they don't have to incriminate themselves is also a claim that I would imagine most folks make. That's correct. Yes, is that fairly well known? Yes, it is. Were his pleadings a model of clarity on this issue? No. I once hit a tennis ball, and it hit the post holding the net, and the other player said to me, that must be an ex post facto shot. That was the way it started. And you said, as long as it's in, right? That's the pro per theory. As long as it's in and you didn't hit it back. Did you reserve time? I reserved five minutes. Thank you. Ms. Tesoro? May it please the Court. I'm Claudia Tesoro from the Attorney General's Office, and I'm here on behalf of the apologies. The exhaustion issue I think you have already touched upon some important details. When Mr. Roman filed his Commonwealth Court mandamus petition, he seemed, if you look at the petition itself, to think that he was exhausting his required remedies. And there was no mention of the self-incrimination issue as has been pretty much confirmed. Could he have raised it at that time? Could he have raised it, yes. Which case would have given him the right to raise it? Is that Rogers? Well, what we have are a series of decisions. Rogers was the first Pennsylvania Supreme Court case that implied that mandamus was an available remedy for people who've been denied parole. Ms. Gibbons is right. That was in 1999. But saying mandamus is an available remedy is not the same thing as saying you can bring a Fifth Amendment claim to the Commonwealth Court. Because you could, at some point in time it was clear, you could bring a mandamus accompanying constitutional claims, but the constitutional claim was limited to ex post facto claims. Well, I think that's a slight mischaracterization because when Cody said that, Cody had only been, the court, the Pennsylvania court, had only been asked by this court to answer the question of whether a person raising an ex post facto challenge can bring any action in the Pennsylvania court system. So that was all they really had to look at. One of the points that came up during the appellant's argument was whether there was anything before the Weaver case. And I don't know about before, but within a matter of months after, and long before Mr. Roman's petition arose, there was the Myers case, which is referred to in the Defoy 1 opinion as one where a constitutional issue had been permitted to be raised via ex post facto in the Pennsylvania case. It seemed to me that the state courts were all over the place. They were saying, yeah, we can consider certainly a constitutional claim. No, we're not going to consider a constitutional claim, only ex post facto claims. So it seemed like it was a moving target. For a petitioner, how do you decide one way or the other? Well, I can't say that the state decisions were crystal clear. They're still not. They're not. But I can make a couple of points as to why I still say that the issue could and should have been raised here. This court itself in Burkett had predicted that the Pennsylvania courts would permit people denied parole to raise constitutional challenges via mandamus. If we were to say that the issue was not exhausted, what is the remedy then? Do we send this case back for exhaustion? Is that what you would? Well, I don't think. Ms. Gibbons might ask us to do that. Or would futility excuse it? Either way, it would get addressed one way or the other, wouldn't it? The merits, you mean? Yeah, I mean, if we say that this issue was not exhausted, do we then send it back to the state court for exhaustion? Well, I guess you could. I agree that the conclusion that would be reached is one that you are permitted to reach yourself. I'm wondering if it's just not more practical, given the passage of time, to deal with the issue on the merits. I think that would be quite practical to just say we're permitted to deny a petition for habeas corpus. You may not be happy with the decision, but it would be a decision on the merits. Right, that's true. This case has had an unusually long history, and I'm not sure exactly why that is, because some of the reasons why there were lags are unknown to me. But in any event, what I wanted to emphasize was that this court in Burkett had specifically predicted that constitutional challenges could be raised. The Pennsylvania courts in Myers in 1998, in Voss in 2001, in Evans in 2003, all before Mr. Roman's case, had entertained constitutional challenges. So to say, and this is the standard on whether exhaustion has or hasn't occurred, that he had no remedy at all and it was clearly foreclosed, would not be accurate. There were reasons to believe that some review was obtainable in the Pennsylvania courts. Moving on to the merits, I guess, as I just said, you can reach that and you can rule against the appellant on the merits based on the record that we have. There's no question that to make out a self-incrimination claim, there are two separate requirements that have to be met, both compulsion and the use of the compelled statement. Neither one has been met here. As we set forth... Counsel's reliance on Justice McConroy's sliding scale of compulsion. In reality, as opposed to strictly legal constructs, it seems to me that someone is in a situation where they know that if they don't say something which is incriminating, they're not going to get parole. That, in the real world, isn't that pretty compulsive? Well, it's certainly a difficult choice to make, but I don't think it's compulsion for Fifth Amendment purposes. The Supreme Court's opinion in Ohio Adult Parole Authority... So if I stick a gun in someone's head and say, give me your money, or this is what Zach Benny would say, give me your money or your life. It's a difficult choice to make, but that's not compulsion. You can't always decide, as he did, you can't always say, wait, I want to think that over. It seems to me compulsion gets to such a point, at some point, and that's the sliding scale, where the ramifications of not doing something are so significant that almost no reasonable person would decide they're free to decide not to do it. And maybe, if it means, in the parole context, you're not going to make parole, depending on how much time you're going to get hit with any setback, that's sufficient compulsion. I don't think that analysis stands up when you look at the cases that we have available to us under the Fifth Amendment, because the kind of pressure that Mr. Roman may have felt is real on a human level. I'm not at all disagreeing with that. But under the Fifth Amendment, you're not forbidden from being required to make difficult choices on whether you're going to speak or not. He had always maintained his innocence. He was found guilty, but he always maintained his innocence. And then he's in prison and he's asked to participate in a drug program, but they wanted to say, I did it. He has to confess to that crime, which is still on appeal. Actually, Your Honor, I'm a little uncertain about the extent to which he had maintained his innocence. Obviously, he went to trial on the case. But I don't think there's any way we can tell from the record whether he testified in his own defense. It's a good point, because I'm not sure of that either. But let's assume that he maintained innocence and it wasn't a plea, he went to trial and was found guilty. And his position is, I don't want to admit in a drug program that I did those things, because the case is still open. And I just may get a retrial. Now, why isn't that a violation of the Fifth Amendment? Why isn't being compelled to admit to a crime that may still be retried, why isn't that a violation of the Fifth Amendment? For the same reason that it wasn't in Ohio Adult Parole Authority v. Woodward. What was that? That was a United States Supreme Court case under the Fifth Amendment, which didn't involve parole, but it involved a clemency interview. And the individual who was challenging on Fifth Amendment grounds the procedures that were used for clemency interviews said, I'm still trying to challenge my conviction and get my conviction overturned if I say something in this clemency procedure that would suggest that I'm taking responsibility and admitting remorse and so on, I'll be compelled to testify against myself. And the Supreme Court said, no. These are choices that have to be made along the way in criminal cases. And it is unpleasant, perhaps, but it is not a Fifth Amendment compulsion situation. It's constitutional to expect a person seeking a discretionary remedy, such as clemency or, in our case, parole, to have to confront that difficult choice and make the choice. Now, there's no requirement that he do it. The consequence, though, is that he stays in prison for a longer term or may stay in prison. We don't have any reason in this record to infer that simply not participating in the sex offender program is what caused Mr. Roman not to be paroled. And as a matter of fact, the opposite is true. Actually, that's one of the requests that he has. What is that? It's sending me back for a hearing to determine if that's so. But what I'm... I know that he's asking for that, but what I'm bringing out is that in the 2003 and 2004 or 2005 denials, both denials, there were several reasons listed for denying parole. Not participating in the program was one, and he was definitely told, you know, we're going to consider it next time if you don't participate when you come back before us. But your view is that even if that was the sole reason, it's not sufficient, and he still does not have a Fifth Amendment, right? Well, that's probably true, but what I'm trying to say now is that it wasn't the sole reason, and therefore to say that he would have been paroled except for this is simply not logical because he had failed on his first parole attempt, and he had three reasons in one of the denials and six reasons in the other for the denial, only one of which has to do with whether he participated in the sex offender program. Well, you mentioned use, so you mentioned compulsion and use, and maybe you can spend your last few minutes on why wouldn't this be tantamount to use with the threat of a new trial possibly looming over him, not the threat, but possibly the threat of having to go into a new trial if it was rewarded on appeal with the prosecution being armed now with his admission that he gave in the parole context. Why wouldn't that be use of the Fifth Amendment? Well, the Ohio v. Woodward case is not a use situation, but it didn't seem concerned about the sort of abstract possibility that it could be used against the individual. More recently than that, though, in the Renda case of this court, which looks back to the Supreme Court's Chavez case, this court pretty strictly construed use because in Renda, if I'm remembering the facts correctly, the individual made statements that were indeed used to develop probable cause, but they were not used at a subsequent trial. But he is saying his statements may be used at a subsequent trial, at least at the time his appeal was pending. Well, that's key. When the appeal was pending, we don't really know for sure that the alleged statements or possible statements would indeed have been used. However, the appeal isn't pending anymore and hasn't been pending since at least 2006. In fact, the original affirmance on the direct appeal was, I think, in 2004. So it's been a long, long time since he could realistically argue, my criminal case is still open. I think Ms. Gibbons was pretty candid about that. The criminal case is not open anymore. And it wasn't open when this case was decided in federal court. It had already ended in the Pennsylvania appellate direct review procedure. So there is no chance that the admission that he thinks he would have to make could have possibly been used against him in the prosecution of the sex offense because that was done. Well, how does this work? If he's not going to admit to what a parole board asks him to admit, is he in no man's land? Is he stuck forever? Not forever. I mean, if the board is going to deny him parole because he's not making this type of admission that they are asking, or that he's not participating in the program that they have set up as a requirement, can he stay in jail forever? He's not going to begin that second sentence until he finishes the program. And if he's not going to finish the program, he can literally stay in prison indefinitely. Anybody who is given a sentence in Pennsylvania, and I presume elsewhere, is facing a sentence of a certain duration. That might be his choice, by the way, but I'm just wondering how this might play out if he continues his position. What was his maximum, do you know? I have the date. Not the date. Was it a life sentence? Excuse me? Was it a life sentence? It couldn't be life, he wouldn't be looking at parole. The first sentence was pretty lengthy, and by violating his parole, he lost his street time. It was 7 1⁄2 to 15, but it was doubled, is that right? Yes, because two counts. But after the parole violation, his sentence was recalculated, and his maximum date, according to the document at page 76 of the record, is February 28, 2015. But his sentence couldn't have been doubled. His sentence could not have been increased. Maybe the amount of time he'd have to serve on the sentence would increase. But his initial sentence had remained fixed. Yes. It was 30 to, the 15 to 30, 1 to 30 to 60, is that what happened? You said it was doubled. No, I was saying that there were two consecutive charges in the original prosecution. And if it was sentenced consecutively, and each sentence was 15 to 30, then he ends up with a sentence of 30 to 60. No, the original sentence was 7 1⁄2 to 15, and it became 15 to 30. Right. But the amount of time that he has to spend in prison is never more than 30 years. He spent part of it before he was paroled originally, then he was paroled, but because of his subsequent conviction, all the time on the street doesn't count anymore, so the balance is still being served right now. Most of it has been served. His maximum release date, when he will turn over to his second sentence, if nothing else happens, is February 28, 2015, apparently. And you're not apparently relying upon the waiver that might arise from his failure to raise this argument, his Fifth Amendment argument, before he saw the R&R from the interstate judge? When the R&R was issued, he objected, and that's where he first raised the Fifth Amendment. This may be too late. But you're not relying upon that. I submit that it is too late, and I think I pointed that detail out in the brief. I did not argue waiver in our brief. Nobody responded to his objections in the district court level. By then, his second conviction had already been affirmed. Yes. And the appeal was done. Yes. Okay. Thank you. Thank you. Just as a brief note, Your Honor, there is a trial transcript that exists, if the court would like me to submit it, I will, of the proceedings in his second trial. He did testify. He did deny involvement in the events underlying the conviction. What about this idea that his appeal was really done by the time he raised the Fifth Amendment claim for the first time before the U.S. Magistrate? How does that affect your view before that we should consider the claim with regard to the total time he spends in prison? You should consider the claim because what's at stake is really six years of time where he was not making any statements because of his Fifth Amendment right. But he was still serving a sentence that was required because of his violation. But he could have been considered for parole within that period of time. He could have been re-paroled, then he could have started to serve the second conviction and probably been done with it at that point. Maybe you can help me because I'm totally lost to something which seems incredibly elementary here. If his conviction is final by the time he raises the issue of the Fifth Amendment claim in federal court, and if the Fifth Amendment claim he's arguing about is not being composed into admitting the crime he's been convicted for, where is his Fifth Amendment right? If he's already been convicted for the crime, how does he have the Fifth Amendment right? What he's saying is I have been in custody for now going on six years because I wouldn't waive my Fifth Amendment right. You, the Commonwealth, were not even considering me for parole, but I couldn't do anything about it because otherwise I'm incriminating myself in a case that's still pending. So there's six years of time. The relief he's asking for is what? Well, he's asking for a finding that in fact he was denied consideration at all for parole because this was the use to which the parole commission was putting his failure to talk. And that he should be considered for parole legitimately back as of 2001 even. And if he's admitted to parole on the first case at that point, then he would have already now served the second case. So you're saying that he's asking us basically to turn the clock back to either the first or second trial and tell the parole board you've got to consider him without putting him in a situation where he's compromising the Fifth Amendment right that no longer exists because he doesn't have the Fifth Amendment right anymore. That's what you're asking us to do? Correct. You parole board cannot consider the fact that he's refusing to incriminate himself because he has a right to remain silent. But he doesn't have the right. He had it maybe back then. He had it back then. And you cannot penalize him that six years where he could have been, any point in there, he could have been re-paroled on the 1977 case. At any point in there, he could have been re-paroled. And at any point in there, the second conviction would have begun tabulating. Well, you talk about a tale told full of sound and fear signifying nothing. So what are the chances of the parole board coming up with a different decision if that were to happen? Well, the fact that they paroled him the first time and they had all the other issues that they listed, and he was paroled in 1992, initially. But this is not the only issue. There are three or four, or five, I think it's more like five reasons, given for the denial. One of which is this failure to participate in the program because he wouldn't have been able to go. So you're saying, go back there, take that item off the menu and determine whether or not he should get parole. And you're saying that the parole board in Pennsylvania will step back and say, well, you know, we can't consider that anymore. Let's parole this guy. Failure to participate in programs, there's another one. I mean, I think that that's just another way of articulating you're not participating fully in this program that we want you to because you're not admitting to things that we want you to admit to. That's another way of saying it. Failure to accept responsibility for the crime, there's a third way of saying it. I think the various reasons that they're giving, if you strip away the fact that he's not in this program for Fifth Amendment purposes, I think they go away because he was paroled initially. Now, granted, he committed another crime. There's no getting out of that. But even though he committed another crime, is that another 15 years' worth of parole denial? That's a very heavy, compulsory gun being held to your head at that point. And the parole board at that point might well have paroled him somewhere in that six-year period, and they would have paroled him to commence service of the second sentence, which would then now be done. Thank you very much. Submitted. Anything else? If I may inquire, does the court wish me to submit the transcript from the trial? I don't think it's necessary. And I'm willing to update. You made the statement. It's, and I'll provide it to counsel. Thank you very much.